# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **NICEWONDER GROUP, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:07CV00060 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF SOCIAL** | ) | Chief United States District Judge |
| **SECURITY** | ) | |
| | ) | |
| Defendant. | ) | |

*John R. Woodrum, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Washington, D.C., and Wade W. Massie, Penn, Stuart & Eskridge, Abingdon, Virginia, for Plaintiff; Mark J. Goldenberg, Office of the General Counsel, Social Security Administration, Baltimore, Maryland, and Sara Bugbee Winn, Assistant United States Attorney, Roanoke, Virginia, for Defendant.*

In this case, I must decide whether the decision by the Commissioner of Social Security that the plaintiff is a "related person" under the Coal Act was arbitrary and capricious. With cross motions for summary judgment before me, I find that it was, and therefore rule in the plaintiff's favor.

I

Congress passed the Coal Industry Retiree Health Benefit Act of 1992 ("Coal Act" or "Act") 26 U.S.C.A. §§ 9701-9722 (West 2002 & Supp. 2008) to ensure that

the health care benefits for retired miners guaranteed by the 1950 and 1974 United Mine Workers of America ("UMWA") Benefit Plans were adequately funded.[1] *See* Coal Act, Pub. L. 102-486, § 19141, 106 Stat. 3037 (1992). Under the Coal Act, the UMWA Benefit Plans merged into the UMWA Combined Benefit Fund ("Combined Fund"). 26 U.S.C.A. § 9702(a)(2). UMWA retirees and dependents who were receiving benefits from either of the two UMWA Benefit Plans as of July 20, 1992, now receive health benefits from the Combined Fund. 26 U.S.C.A. § 9703(f).

The Coal Act holds signatory operators and related persons jointly and severally liable to pay premiums to the Combined Fund. 26 U.S.C.A. § 9704(a). Signatory operators include entities that are or were signatories to a coal wage agreement. 26 U.S.C.A. § 9701(c)(1). Related persons are entities that have some relationship with a signatory operator. 26 U.S.C.A. § 9701(c)(2).

The Commissioner of Social Security ("Commissioner") assigns liability for the health benefits of each retired miner to either a signatory operator or a related person. 26 U.S.C.A. § 9706(a). If a signatory operator is no longer involved in any business activity, a related person becomes liable for premium payments. *Id.*

---

[1] For a more extensive account of the history behind the Coal Act, see *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 442-47 (2002).

- 2 -

Case 1:07-cv-00060-JPJ-PMS   Document 33   Filed 10/24/08   Page 2 of 11   Pageid#: 1368

This case involves two, somewhat intertwined companies. The plaintiff Nicewonder Group, LLC ("Nicewonder"), formerly known as Contracting Engineering Services ("CES"), provides administrative and engineering services to various businesses. Contracting Enterprises ("CE"), a former customer of CES, produced coal and employed miners under a UMWA wage agreement until 1981, leased and sold mining equipment until 1992, and then dissolved.

Between 1998 and 1999, the Commissioner assigned CES responsibility for the benefits of four former CE miners,[2] maintaining that CES was a related person to CE. CES soon protested these four assignments under § 9706(f)(2) of the Act,[3] but to no avail. In addition, the Commissioner attributed liability to it for the pensions of four additional miners and eventually confirmed CES's status as a related person.[4]

In this civil action, Nicewonder asks the court to declare that it is not a related person to CE, to order the Commissioner to withdraw all premiums assigned to

---

[2] In two letters both dated September 30, 1998, the Commissioner assigned CES liability for miners Kendrick, Sykes, Clay, and Browning.

[3] CES challenged the assignments of Kendrick, Sykes, Clay, and Browning in a letter dated January 12, 1999.

[4] The Commissioner assigned Richardson and Bailey to CES in letters dated September 29, 1999 and September 26, 2000, respectively. Baker and Bryant were assigned in a letter dated September 17, 2002.

- 3 -

Nicewonder,[5] and to prohibit future assignments based on a related person status. In response, the Commissioner maintains that he had sufficient evidence to classify Nicewonder as a related person. On the basis of the administrative record, both parties have moved for summary judgment and the Commissioner has in addition moved for judgment on the pleadings. The issues have been briefed and argued and the case is ripe for decision.

II

My review of the Commissioner's decision to classify the plaintiff as a related person is governed by the Administrative Procedure Act ("APA"), 5 U.S.C.A. § 704 (West 2007). *Sigmon Coal Co. v. Apfel*, 226 F.3d at 301 ("As a final agency decision, the review process is governed by the APA.").[6] Accordingly, unless I find that the

---

[5] Because Nicewonder did not challenge the Baker and Bryant assignments under § 9706(f)(2), the Commissioner argues that Nicewonder waived the right to have them reviewed here. I disagree. These assignments were made on the same related person basis that the plaintiff had already challenged. To require another appeal of the same decision would be futile. *See Sigmon Coal Co. v. Apfel*, 33 F. Supp. 2d 505, 508 n.13 (W.D. Va. 1998) (acknowledging the lack of necessity of "further administrative challenges where, as here, the Commissioner is making repeated Coal Act assignments based upon similar facts and law"), *aff'd*, 226 F.3d 291 (4th Cir. 2000), *aff'd*, 534 U.S. 438 (2002).

[6] I do not apply the typical standard of review to these summary judgment motions. That standard contemplates the isolation of the factual issues in dispute, an analysis inappropriate under the APA. *See Lodge Tower Condo. Ass'n v. Lodge Props., Inc.*, 880 F. Supp. 1370, 1374-75 (D. Col. 1995) ("[A] motion for *partial* summary judgment–makes no

- 4 -

Commissioner's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," his assignments of liability to Nicewonder will stand.[7]  5 U.S.C.A. § 706(2)(A) (West 2007); *see A.T. Massey Coal Co. v. Massanari*, 305 F.3d 226, 236 n.16 (4th Cir. 2002).

In this regard, I consider only whether "the agency's decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment . . . ." *Virginia Agric. Growers Ass'n v. Donovan*, 774 F.2d 89, 93 (4th Cir. 1985) (internal quotations and citation omitted).  I may consider only those facts included in the administrative record at the time the Commissioner made his decision. *See Fort Sumter Tours, Inc. v. Babbitt*, 66 F.3d 1324, 1335-36 (4th Cir. 1995) ("Judicial review of administrative action is generally confined to the administrative record.") (citation omitted).

Following these principles, I now consider whether the Commissioner's decision to classify Nicewonder as a related person was arbitrary and capricious.

---

procedural sense when a district court is asked to undertake judicial review of administrative action."), *aff'd*, 85 F.3d 476 (10th Cir. 1996).

[7] Nicewonder contends that the Commissioner's decision deserves no deference.  I do not address this argument because I find that the Commissioner's decision was arbitrary and capricious even under a deferential standard.

Nicewonder contends that the evidence included in the administrative record fails to support the Commissioner's decision to classify it as a related person to CE. The Commissioner maintains that he accurately designated Nicewonder as a related person because the evidence in the administrative record demonstrates that CES and CE shared a joint venture as defined in the Coal Act. Based on my review of the administrative record, I hold that the Commissioner's decision was arbitrary and capricious.

To be classified as a related person, an entity must fall under at least one of three prongs. The Coal Act states:

> (A) In general– A person shall be considered to be a related person to a signatory operator if that person is—
>
> (i) a member of the controlled group of corporations (within the meaning of section 52(a)) which includes such signatory operator;
>
> (ii) a trade or business which is under common control (as determined under section 52(b)) with such signatory operator; or
>
> (iii) any other person who is identified as having a partnership interest or joint venture with a signatory operator in a business within the coal industry, but only if such business employed eligible beneficiaries, except that this clause shall not apply to a person whose only interest is as a limited partner.

> A related person shall also include a successor in interest
> of any person described in clause (i), (ii), or (iii).

26 U.S.C.A. § 9701(c)(2)(A). The Act requires the Commissioner to make a related person determination based on an entity's status as of July 20, 1992. 26 U.S.C.A. § 9701(c)(2)(B). If the entity was not in business as of July 20, 1992, then the Commissioner must consider the entity's status as of the date it ceased operations. *Id.*

CES was in business as of July 20, 1992. Thus, the Commissioner must have had sufficient evidence to conclude that, as of July 20, 1992, at least one of the following four scenarios existed: (1) CES and CE belonged to the same "controlled group of corporations"; (2) CES and CE were under "common control"; (3) CES had a partnership interest or a joint venture with CE; or (4) CES was a successor in interest to any entity possessing one of these three characteristics. § 9701(c)(2)(A).

Nicewonder maintains that the Commissioner decided that it was a related person on the basis that CES and CE shared common control. In his Answer, the Commissioner averred that he made his decision under the joint venture prong, but now admits that "the exact basis for [the] initial determination is not known ." (Def.'s Summ. J. Br. 10.) The Commissioner also acknowledges that "CE and CES seemingly miss being automatically statutorily considered related under [the common

- 7 -

control prong] because they do not have more than 50% common ownership . . . ." *Id.* at 11.  Because the Commissioner does not argue that CE and CES belonged to a controlled group of corporations and all but concedes on the common control point, I will consider the Commissioner's decision as one made under the joint venture prong.

Within the context of the Coal Act, the term "joint venture" remains undefined. In this regard, the Commissioner relies on a case from this court stating that "[a] joint venture is a contractual relationship between two business entities evidenced by a common purpose, a joint proprietary interest in the subject matter, the right to share profits, the duty to share losses and the right to joint control."  *Humphreys Enterprises, Inc. v. Barnhart*, No. 2:02CV00049, 2002 WL 31528587, at *1 (W.D. Va. Nov. 6, 2002) (citations omitted).  Nicewonder suggests an alternative definition, but I need not apply it here since I find that the Commissioner's decision was arbitrary and capricious even if I employ his meaning of joint venture.

To support his claim that CES had a joint venture with CE, the Commissioner relies on three pieces of evidence presented in the administrative record.  The first is common ownership: from 1984 until July 20, 1992, J.D. Nicewonder owned fifty percent of CES and eighty-four percent of CE, while his brother Don Nicewonder owned fifty percent of CES.  The second is that CE and CES shared the same

business address. The third concerns a person named David Lester, who owned eight percent of CE and simultaneously served as Controller for CES.

From these facts the Commissioner appears to have arrived at two conclusions: (1) that the employees of CE and CES were able to approach owners of either company with questions concerning the operation of either business; and (2) that Lester managed CE while serving as the Controller for CES. In short, the Commissioner assumed that those responsible for managing CE were responsible for managing CES, and vice versa.

Because these conclusions have no support in the administrative record, I find that the Commissioner's decision to classify Nicewonder as a related person under the joint venture prong was arbitrary and capricious. The Commissioner cannot pinpoint any evidence that managers from CES directed CE employees or that managers from CE directed CES employees.[8] He does not cite any concrete evidence that Lester simultaneously managed both CE and CES. Facts from the record rather

---

[8] And even if he did, that evidence would not be relevant here. *See Holland v. High-Tech Collieries, Inc.*, 911 F. Supp. 1021, 1035-36 (N.D. W.Va. 1996) (analyzing a number of factors to determine whether one entity was the alter ego of another). In *Holland*, the court employed the alter ego test not to determine whether a company qualified as a related person, but to determine whether it qualified as an operator under the Act. *See id.* at 1029 ("High-Tech seeks to avoid liability . . . by pointing to Vesta as the actual employer . . . with High-Tech acting only as mine manager rather than owner/operator.").

than inferential leaps must support the Commissioner's decision, and that is not the case here.

Mere common ownership does not automatically imply common management. Nor does common ownership indicate that a joint venture between two companies exists. In fact, the Commissioner's preferred definition of joint venture does not include common ownership. *See Humphreys Enterprises*, 2002 WL 31528587, at *1 (describing joint venture relationship). There is no indication that CE and CES pursued a common purpose or a joint proprietary interest, shared profits and losses, or established joint control over a business. In the end, the Commissioner can rely on nothing more than a common business address, and that alone does not prove "that the two entities had undertaken a joint venture or a partnership." *Id.*

For these reasons, I hold that the Commissioner's decision that Nicewonder is a related person to CE was arbitrary and capricious. In so holding, I nonetheless recognize the reality addressed by the Coal Act that "coal operators frequently reorganize their corporate structures and spin off or consolidate subsidiaries." *A.T. Massey*, 305 F.3d at 239. Even so, assignments of liability must be predicated on evidence more substantial than the facts contained in the administrative record here.

Because I hold that the Commissioner's decision that Nicewonder is a related person to CE was arbitrary and capricious, I need not address either party's arguments regarding the constitutionality of the Coal Act.

III

For the reasons stated, I will grant the relief requested by the plaintiff and direct the Commissioner to withdraw the retirees assigned to the plaintiff and prohibit future such assignments.

A separate final judgment will be entered.

DATED: October 24, 2008

/s/ JAMES P. JONES
Chief United States District Judge